Mr. Justice ClaytoN
delivered the opinion of the court.
The estate of Joseph Neibert was reported as insolvent, by the administrator, to the probate court of Adams county. The commissioners appointed to audit the claims against the estate, made their report to the September term, 1842, of the court. By this report, claims against Joseph Neibert individually were allowed to the amount of $449,070, and against him as a partner in two insolvent firms, to the amount of $247,085. This report was confirmed.
At the December term, 1843, of the court, Stephen Duncan filed his petition, setting forth that there had been allowed him in the report of the commissioners, as a creditor of Neibert individually, a claim to the amount of $3000 ; and that there was a great deficiency of assets to pay all the claims. He therefore prayed that the individual estate of Neibert might be first applied to the payment of his individual debts,' and that the partnership debts might be excluded from any share of the individual estate, until all the individual debts were satisfied. At the December term, 1844, of the court, a decree was made in conformity with the prayer of this petition,"from which the cause comes by appeal to this court.
The doctrine of the courts of equity, which appropriates individual effects to the payment of individual debts, and partnership effects to partnership debts in the first instance, which was applied by the probate judge in this case, we think does not control the mode of disbursing the insolvent estates of deceased persons, because of the statute laws of this state.
The SOth section of the law in regard to the estates of decedents (H. & H. 409) directs, “ that when the estate, both real *294 and personal, of any person deceased, shall be insolvent, or insufficient to pay all just debts, which the deceased owed, the said estate, both real and personal, shall be distributed to and among all the creditors, in proportion to the sums to them respectively due and owing.” Another statute makes “ all promises, contracts and liabilities of copartners joint and several.” H. & H. 595.
These two laws taken together, in our view give to the creditors of the partnership the same right to satisfaction out of the estate, which individual creditors have. Before the death of either parther, the creditors of the firm may unquestionably recover judgment against any one of them individually, and proceed to make the debt out of his separate estate, just as if it were a separate debt. The death of one or more produces no change of this right. Both classes of creditors are in the same situation, and entitled to an equal pro rata proportion of the effects. See Tucker v. Oxley, 5 Cr. 40.
Little practical evil or inconvenience can result from this construction. If the partnership creditors choose to proceed against the surviving partners, their claim will be diminished to the extent they may obtain payment from them. If, on the other hand, they go against the estate of the deceased partner, his representative will stand in their place, and be substituted to their rights, in reference to the other partners.
The decree of the probate court is liable to be reversed for another cause. It has been repeatedly decided by this court, that after the report of commissioners of insolvency has been received and allowed, the court cannot, at a subsequent term, open it for any cause, unless the former orders were null and, void. See Herring v. Wellons, 5 S. & M. 355. The power of the court over it has ceased.
After the» final apportionment of the distribution of assets among the creditors, the executor or administrator becomes liable to them for their respective shares. H. & H. 410. The rights of the parties are then fixed, and the probate court cannot, after that term, make any further order, which would be binding upon them.
Another point in the canse has been fully disposed of, by the *295 case of Assignees of Com. and Railroad Bank of Vicksburg v. Norcum & Burwell, 4 S. & M. 332.
Our conclusion in this case is founded entirely upon the construction of our statutes. We have not attempted to follow the rules which have prevailed, in the English courts of chancery, in the effort to work out an highly artificial equality of rights. These rules, especially in regard to the estates of bankrupts, have been unstable and fluctuating. We think our statutes mark out a plain course, and have endeavored to follow it.
This decision is not intended to conflict with the case of Bullock v. Dorsey, decided at the present term. The statutes which govern the two cases are entirely distinct.
The decree is reversed, and the fund directed to be distributed among all the creditors, individual and partnership, in proportion to the amount of their respective claims.
Decree reversed.